# UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF VIRGINIA
NEWPORT NEWS DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Case No. 16-50394-FJS |
| COLONIAL PENNIMAN, LLC, | ) | |
| | ) | |
| *Debtor.* | ) | |
| | ) | |
| COLONIAL PENNIMAN, LLC, | ) | |
| | ) | APN 17-05003-FJS |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN WILLIAMS, | ) | |
| MAXINE WILLIAMS, | ) | |
| EVB, SUCCESSOR BY MERGER TO | ) | |
|     VIRGINIA COMPANY BANK, | ) | |
| MARK C. HANNA, TRUSTEE, | ) | |
| CONWAY H. SHIELD, III, TRUSTEE, | ) | |
| | ) | Chapter 11 |
| *Defendants.* | ) | |

## MEMORANDUM OPINION

This matter came before the Court for trial on June 28, 2017, on the complaint filed on

January 25, 2017, by Colonial Penniman, LLC (the "Complaint"). The Complaint seeks both

injunctive and declaratory relief against defendants John Williams; Maxine Williams; EVB,

successor by Merger to Virginia Company Bank; and Mark C. Hanna and Conway H. Shield, III,

trustees. The Complaint relates to an ongoing dispute between Colonial Penniman, LLC (the

"Debtor") and John and Maxine Williams, who own property neighboring the property of the

Debtor, with respect to an easement. The Court has jurisdiction over this proceeding pursuant to

28 U.S.C. §§ 157(b) and 1334(b). This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

Venue is proper under 28 U.S.C. §§ 1408 and 1409(a).

The Court, having fully considered the evidence and arguments of the parties and the applicable law, determines that the requested relief should be granted in part and denied in part. This Memorandum Opinion constitutes the findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52, as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7052.

## I. Procedural History

### A. The Complaint

The Complaint makes a number of allegations regarding the actions of John Williams and Maxine Williams (the "Williamses"). The dispute between the Debtor and the Williamses arises from an alleged disagreement regarding the scope of an easement (the "Easement"), which is a tree-lined gravel strip of land that runs across the Williamses' property, located at 2497 Manion Drive,[1] Williamsburg, Virginia, and onto the Debtor's 8.42 acre parcel, which the Debtor seeks to sell (the "Property"). *See* Compl. ¶¶ 7, 10, Ex. B. A deed of easement evidencing the Easement was attached to the Complaint.

According to the Debtor, the Williamses have undertaken numerous actions to frustrate the sale of the Property. Amongst the Debtor's concerns is the Williamses' construction of barriers across the Easement, which first consisted of a rope and chain barrier and "no trespassing" sign, which was later replaced with a "16' farm gate" (the "Gate") across the Easement. *Id.* ¶¶ 20(ii)-(iii). The Debtor alleges that these barriers have discouraged buyers from purchasing the Property. *Id.* The Debtor notes that the Williamses allege that Virginia law permits them to construct such a barrier across the Easement; however, the Debtor disagrees with

---

[1] The Complaint alleges that the Williamses live at the property located at "2425 Manion Drive"; however, this is incorrect. Compl. ¶ 7. According to the Williamses, they are actually the owners of a residence located at "2497 Manion Drive." Williams Ans. ¶ 7, AP No. 9.

this interpretation. *See id.* ¶ 21. The Debtor further alleges that the Williamses have advised prospective purchasers that access to the Property via the Easement is "limited" and "restricted," further frustrating the Debtor's ability to sell the Property. *Id.* ¶ 20(i). The Debtor contends that the Williamses' chief motivation in undertaking to frustrate the sale of the Property is a years-old dispute between the Williamses and C. Lewis Waltrip, II, the principal of the Debtor (hereinafter "Waltrip").[2] *See id.* ¶¶ 14-16.

The Debtor alleges that, taken together, the Williamses' actions have "effectively destroy[ed]" the Debtor's ability to market the Property, rendering the Debtor "unable to identify a qualified real estate agent willing to accept the listing." *Id.* ¶ 22. Further, due to the ongoing dispute, the Debtor alleges that the "Williams [*sic*] assertions" constitute a "known claim" and therefore would not be covered by any title insurance policy. *Id.* ¶ 23. According to the Debtor, these obstacles have resulted in withdrawal of two purchase offers. *Id.* ¶ 22. Further, a verbal offer was allegedly not reduced to writing because of the dispute. *Id.*

Seeking to resolve the dispute, the Complaint names as defendants the Williamses, as well as EVB, successor by merger to Virginia Company Bank, a creditor secured by the Property (hereinafter "EVB").[3] In addition to EVB, the Complaint also names as defendants Mark C.

---

[2] The Debtor claims that the Williamses previously owned the Property, which they attempted to sell with Waltrip's assistance. Compl. ¶ 14. In particular, at the time of their attempted development, the Williamses needed access to Greensprings Road, and therefore required a conveyance from Waltrip, who owned adjacent farm property that fronted upon Greensprings Road. *Id.* However, according to the Debtor, Waltrip refused to convey the necessary property to the Williamses, and their attempted development failed. *Id.* Accordingly, the Williamses, unable to develop the Property themselves, eventually sold it to Waltrip. *Id.* ¶ 15. The Debtor alleges that this created bad blood between the parties, and now motivates the Williamses to frustrate the Debtor's attempted sale of the Property. *Id.* ¶ 16.

[3] The Court acknowledges that on June 29, 2017, Sonabank filed a Notice of Name Change with the Court. In that notice, Sonabank informed the Court that it was the successor by merger to EVB, and accordingly, would be vested with all rights of EVB, including its status as

Hanna and Conway H. Shield, III, the trustees on EVB's deed of trust (hereinafter, collectively

with EVB, the "EVB Defendants"). In the Complaint, the Debtor requests both injunctive and

declaratory relief. *See id.* ¶ 2. The Court notes that the Debtor asserts several different requests

for relief under the broad umbrellas of injunctive and declaratory relief. Accordingly, the Court

has reduced the Debtor's various requests for relief into enumerated counts.

According to the Court's review of the Complaint, the Debtor proceeds on the following

five Counts:

Count I:

[Entry of an injunction that] prohibit[s] and enjoin[s] Williams [*sic*] from placing
barriers of any kind on the subject easement, erecting signage that will or could be
construed as relating to the easement or communicating in any manner with
prospective purchasers or business invitees of the Debtor.

*Id.* ¶ 27.

Count II:

[Declaratory judgment that the] Debtors [*sic*] current and intended use of the
subject easement, for ingress and egress, by the current owner and subsequent
owners of the benefitted lot and subdivided lots, including their reasonable
invitees, is permitted by the easement and within the scope of the easement.

*Id.* ¶ 30(i).

Count III:

[Declaratory judgment that] Williams [*sic*] are not entitled to erect fences, gates
or barriers across the easement, nor may they impede, in any way, the use of the
easement.

*Id.* ¶ 30(ii).

Count IV:

---

the beneficiary on the deed of trust on the Property. Notice of Name Change at 1, AP No. 64.
The Court acknowledges this Notice of Name Change; however, for the sake of clarity, the Court
will continue to refer to the entity as EVB throughout this Memorandum Opinion.

> [Declaratory judgment that] [t]he Debtor is not required by law, or the plain language of the easement, to have or create any other access to the property other than the easement, to access the property from Green Springs [*sic*] Road or to construct access roads or driveways from Green Springs [*sic*] Road.

*Id.* ¶ 30(iii).

> Count V:

> Such other and further [declaratory judgments that] will permit a title insurer to insure title to the subdivided lots, including the easement without exception.

*Id*. ¶ 30(iv).

## B. The Williamses' Answer

The Williamses filed the Answer and Affirmative Defenses of John and Maxine Williams to Complaint for Temporary and Permanent Injunction, and Declaratory Relief (the "Williams Answer") on February 15, 2017. Primarily, the Williamses admit to installing the rope and chain barrier that has since been replaced with the Gate, which they describe as a "hinged (but unlocked) gate." Williams Ans. ¶ 17. The Williamses also deny that the installation and maintenance of a gate on the Easement is unlawful under Virginia law. *Id*. ¶ 21. Further, the Williamses disagree with the Debtor's characterization of the events leading up to their sale of the Property to the Debtor.[4] *See id*. ¶¶ 14-15.

## C. The EVB Defendants

The Williamses and the Debtor were not the only parties involved in litigating issues related to the Easement. Prior to initiation of this suit, on November 15, 2016, EVB filed a motion for relief (the "Motion for Relief") in the related main bankruptcy case seeking relief

---

[4] Specifically, the Williamses argue that upon acquiring the Property in 1978, they obtained a 50-foot easement to Greensprings Road, and therefore, never required an additional conveyance from Mr. Waltrip to successfully develop the Property. Williams Ans. ¶ 14. Instead, they explain that their decision not to develop the Property "was solely an economic one," which they based upon the expected costs of developing the right of way to Greensprings Road. *Id.*

from the automatic stay, in part on the theory that the unresolved dispute with the Williamses had depressed the Property's value and negatively impacted its marketability, depleting the Debtor's equity in the Property and denying EVB adequate protection. Mot. for Relief ¶¶ 13, 21-22, ECF No. 83.[5] In support of its Motion for Relief, EVB explains that it is the beneficiary of a first deed of trust on the Property, securing the amount of $1,228,239.94 as of the petition date. *Id*. ¶ 8. Although the Property previously appraised at $2,000,000.00, *id*. ¶ 15, EVB alleges that due to the Easement dispute, the value of the Property is "significantly less than $2,000,000 and impairs the value of [EVB's] lien," *id*. ¶ 18. In the Motion for Relief, EVB claims that it has made "repeated requests" of the Debtor to file a proceeding in bankruptcy court or state court "to resolve the easement issue." *Id*. ¶ 14.

When the Complaint was filed, subsequent to the filing of the Motion for Relief, the Debtor named the EVB Defendants as defendants. In the EVB Defendants' Answer, filed on February 13, 2017 (the "EVB Answer"), the EVB Defendants reassert their contention that the previously appraised value of $2,000,000.00 for the Property is no longer attainable due to the ongoing Easement dispute. EVB Ans. ¶ 26. The EVB Defendants present no objection or affirmative defenses to the Debtor's requested relief. *See id.* ¶¶ 27, 30.

## II. Findings of Fact

As pled in the Complaint, the dispute proceeds on five counts. To properly review these counts, the Court must first describe the Easement as well as the barriers the Williamses installed on the Easement. Thereafter, the Court shall make findings of fact regarding documentary evidence and testimony presented at a hearing held March 24, 2017, and trial held June 28, 2017.

---

[5] "ECF No." refers to a docket entry in the main bankruptcy case, Case No. 16-50394-FJS.

### A. The Easement

The Williamses and the Debtor entered into the Deed of Easement and Covenant to Maintain Buffer Area and Right of First Refusal on January 15, 2007 (the "Deed of Easement"). Debtor Ex. 2 at 1. The Deed of Easement was recorded in the City of Williamsburg and County of James City on January 17, 2007. *Id*. at 3. According to the document, the Easement is a strip of land that is twenty-five feet wide and two hundred fifty feet long, and runs to the Property from the end of a cul-de-sac "located on the eastern end of Manion Drive" in Williamsburg, Virginia. *Id.* at 1. Therein, the Williamses granted to the "Grantees," defined to include the Debtor, its successors and assigns, and any subsequent purchaser of up to "three waterfront lots and one interior lot," the right to use the Easement for ingress and egress. *Id*.

In addition to granting access to the Easement for ingress and egress, the Deed of Easement contemplates additional rights and responsibilities of the "Grantees." Specifically, the Deed of Easement affords the Grantees rights including the "laying, constructing and maintaining underground utilities at its cost along and under [the Easement]." *Id*. The utilities include "sewer, telephone, water, gas, electricity, and cable to benefit [the] Grantees, their successors and assigns." *Id.* at 2. The Deed of Easement also grants the right to "improve the current gravel driveway within the area of easement . . . ." *Id*.

With the above-mentioned rights, also come certain responsibilities. Particularly, the Grantees are expected to leave undamaged the seven magnolia trees lining the Easement's southwest boundary, and the twenty-two Leyland cypress trees along the Easement's northeast boundary, and must replace and repair any trees that do become damaged "so as to maintain the current landscape conditions . . . ." *Id.*

The Easement is currently the only driveway that runs to the Property, which is bordered to its south by the James River. *See* Williams Ex. B. The Easement is fronted to the east by property owned by the Jamestown 4H Club, and to the west by various residences, including that of the Williamses. *Id*. To the Property's north is a seventy-one acre tract of land that separates the Property from Greensprings Road. *Id.*

### B. The Barriers

At one time, there was no barrier crossing the Easement. Debtor Ex. 10. Subsequently, however, a rope barrier with hanging chains was fastened to wooden posts on either side of the Easement. Debtor Ex. 11. The chains hung from the rope, and attached to one of the chains was a sign, which the Debtor alleges was a "no trespassing" sign. *See id*.; Compl. ¶ 20(ii).

There is no dispute that the rope and chain barrier was replaced with a metal gate. *See* Williams Ans. ¶¶ 17, 20. It appears that the "no trespassing" sign that previously hung from the rope and chain barrier was removed from the Easement along with that barrier. *Compare* Debtor Ex. 11, *with* Debtor Ex. 12, *and* Williams Ex. F. There are presently no signs on the Easement.[6] The metal gate spans the width of the unpaved driveway and is comprised of several, interconnected metal bars. Williams Ex. F. The Gate is connected to wooden fencing, with hinges on one side and an unlocked metal chain wrapping around both the fence post and the end of the Gate on the other side. *Id*. Further, it appears the Gate may only be opened or closed manually. *Id.*

---

[6] The record indicates that the Williamses currently maintain three signs, including a "no trespassing" sign; however, these signs are installed on a grassy area beside the driveway leading to the Williamses' residence, and apparently not on the Easement itself. *See* Williams Ex. L.

### C. March 24, 2017 Hearing

Prior to the trial held in this matter, the Court convened a hearing on March 24, 2017 (the "March Hearing") on, amongst other things, a motion for preliminary injunction filed by the Debtor, at which the parties introduced evidence and testimony. After considering the matter, the Court denied the Debtor's motion and set the Complaint for trial to be conducted on June 28, 2017. *See* March 24, 2017 Hr'g Tr. 204:5 (hereinafter "March Tr."). Acknowledging that the evidence presented at the March Hearing could be useful at trial, the Court allowed for any exhibits presented at the March Hearing to remain in full force and effect for purposes of consideration at the trial on the Complaint. *See* Suppl. Pretrial Order ¶ 1, AP No. 47.

At the preliminary injunction hearing, Waltrip testified regarding his interpretation of the Deed of Easement. Specifically, the Debtor's principal explained his belief that, according to the Deed of Easement, the Easement should be accessible by the Debtor's workmen and other invitees necessary to develop and sell the Property. March Tr. 98:5-11. However, Mr. Williams testified that, in his view, the Deed of Easement does not permit use of the Easement by the Debtor's invitees, workmen, or other guests. *Id*. at 158:1-4. In addition, Mr. Williams admitted to advising potential purchasers that the "lot owner could use the [E]asement, but not guests." *Id.* at 149:14-15; *see also id*. at 148:22-23 (explaining that "the [E]asement as written does not allow for guests, invitees, or anyone else").

Mr. Williams further described his conversations with prospective purchasers, recalling a total of three instances. *Id*. at 176:11-25. The first occurred in July of 2015, with Mr. Waltrip present. *Id*. 176:11-13. The second conversation was with an unnamed individual and occurred in "either late November, early December," lasting approximately twenty minutes. *Id*. at 176:13-18; *see also id*. at 148:13-149:2. The final conversation occurred on an undisclosed date, with "Mr.

Sterling Nichols," who was later joined by Mr. Waltrip. *Id*. at 176:19-177:2. According to Mr. Williams's recollection of this third encounter, it eventually turned into "a shouting match between two old fat men, being Mr. Waltrip and myself." *Id*. at 176:24-25.

At the March Hearing, the Court accepted two purchase agreements into evidence solely to establish that the offers were received by the Debtor. *See* Debtor Exs. 5, 6; March Tr. 37:17-20, 39:16-21. Waltrip testified that the Debtor received the purchase offers, and that he believed that at least one of the prospective purchasers remained interested in purchasing the Property. March Tr. 35:7-39:6. However, Waltrip offered no testimony as to why neither purchase offer had resulted in a sale of the Property. Further, no testimony was offered by the prospective purchasers in support of these purchase offers.

### D. June 28, 2017 Trial

At trial, the parties appeared and presented further documentary evidence as well as testimony from Mr. Williams and Waltrip.

Further, in light of their apparent alignment of interest with the Debtor, the Court inquired as to the status of the EVB Defendants, asking whether the Debtor would consider dismissing them as parties to the suit. June 28, 2017 Trial Tr. 5:9-12 (hereinafter "June Tr."). In response, counsel for the Debtor admitted that "I don't think that they're participants." *Id*. at 5:13-14. However, the Court ultimately declined to dismiss them from the suit after the EVB Defendants appeared and represented that they "needed to be made a party" to avoid creating a chain of title issue. *Id*. at 5:21-22; *see also id*. at 6:1-2 (deciding that the Court would "leave [the EVB Defendants] in for [the] limited purpose [of] clarifying the chain of title").

### III. Realignment of the Parties

Federal courts may realign parties according to their actual interests in the litigation. *Imel v. IRS* (*In re Imel*), 169 B.R. 37, 38 (Bankr. W.D. Tex. 1994) (citing *U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992); *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 236 (5th. Cir. 1988)). However, the need to realign most often arises in cases of diversity jurisdiction. *City of Indianapolis v. Chase Nat'l Bank of New York*, 314 U.S. 63, 69 (1941).

Before reaching the merits of the dispute, courts sitting in diversity jurisdiction must first examine the "principal purpose of the suit" to determine whether the "necessary collision of interest" exists between the parties. *City of Indianapolis*, 314 U.S. at 69 (citation omitted). This review should include a consideration of the "pleadings and the nature of the suit" to ensure that the alignment of the parties "clearly manifest[s] the proper alignment of the dispute." *U.S. Fid. & Guar. Co. v. A & S Mfg. Co.*, 48 F.3d 131, 134 (4th Cir. 1995). According to this review, if a court finds that parties are not truly adverse with regards to the "primary issue in the controversy," the court must realign them according to their actual interests. *Lott v. Scottsdale Ins. Co.*, 811 F. Supp. 2d 1220, 1224 (E.D. Va. 2011).

Although bankruptcy courts do not decide cases that arise under federal diversity jurisdiction,[7] bankruptcy courts have recognized the need to realign parties according to their

---

[7] Pursuant to 28 U.S.C. § 157(a), a district court may refer to the bankruptcy court "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 157(a). Accordingly, the United States District Court for the Eastern District of Virginia entered a standing order referring all bankruptcy matters to the bankruptcy court on August 15, 1984. *In re Administration of Bankruptcy Cases and Procedures to the Bankruptcy Judges of this District* (effective June 28, 1984), https://www.vaeb.uscourts.gov/wordpress/?wpfb_dl=21. Because a bankruptcy court reviews matters referred to it pursuant to 28 U.S.C. § 157(a), questions pertaining to diversity jurisdiction do not arise in this Court, nor any other bankruptcy court.

actual interests. *See, e.g.*, *Imel*, 169 B.R. at 38. Without diversity of citizenship as the basis for jurisdiction, bankruptcy courts are less frequently faced with the task of realigning the parties to litigation. However, bankruptcy courts, including bankruptcy courts within the Fourth Circuit have determined that they may, when necessary, engage in realignment.

For example, at trial, the United States Bankruptcy Court for the Eastern District of Virginia granted an originally named defendant's request to be realigned as a plaintiff in recognition of its actual interests in the litigation. *Broyhill v. DeLuca* (*In re DeLuca*), 194 B.R. 65, 67 n.1 (Bankr. E.D. Va. 1996). In that case, the party moving for realignment had previously undertaken actions in concert with the plaintiff, which gave rise to the issues in controversy and were adverse to the interests of the defendant. *Id.* at 70. In addition, the United States Bankruptcy Court for the Western District of Texas ordered realignment where the debtor brought a nondischargeability action against the Internal Revenue Service (the "IRS"). *Imel*, 169 B.R. at 38. The court determined that because the IRS had the burden of proof in the nondischargeability action, it should be realigned as the plaintiff in the suit. *Id.* (explaining that "[a]s a general rule, trial courts enjoy the discretion to realign parties as necessary, according to their actual interests in the litigation"). Bankruptcy courts have also ordered realignment where the plaintiff names as a defendant a party with whom it shares legal counsel. *See In re ASARCO, LLC*, No. 05-21207, 2011 WL 2975716, at *6 (Bankr. S.D. Tex. July 20, 2011) (realigning the parties where the plaintiff named as defendant its wholly-owned and financially dependent subsidiary with whom it shared legal counsel); *see also Spradlin v. Williams* (*In re Alma Energy, LLC*), Adv. No. 09-7005, 2012 WL 243746, at *11 (Bankr. E.D. Ky. Jan. 24, 2012); *Shaia v. Three Rivers Woods, Inc.* (*In re Three Rivers Woods, Inc.*), No. 98-38685-T, 2001 WL 720620, *3 (Bankr. E.D. Va. Mar. 20, 2001); *Creditors' Comm. for Jermoo's Inc. v. Jermoo's Inc.* (*In re Jermoo's Inc.*), 38

12

B.R. 197, 200 (Bankr. W.D. Wis. 1984) (explaining that "the court is free in a proper case to realign the parties according to their true interests").

The Court finds that realignment of the parties is warranted by the facts of this case. A review of the record makes clear that the interests of the EVB Defendants and Debtor are aligned with respect to the Debtor's requests for declaratory and injunctive relief.

The Answer of the EVB Defendants, filed February 13, 2017, underlines this convergence of interests. Specifically, in their Answer, the EVB Defendants state that EVB is the beneficiary under a first priority deed of trust, securing the amount of $1,228,239.94, as of the filing of the Debtor's bankruptcy petition. EVB Ans. ¶ 8. However, due to the access issues arising from the Easement dispute, the EVB Defendants believe the Property is worth less than its $2,000,000.00 appraised value. *Id*. ¶ 26.

An examination of the relief requested in the Complaint further demonstrates that the relief stands to impact the value of the Property. Indeed, none of the Debtor's requested relief runs contrary to the interests of the EVB Defendants. Instead, the Complaint seeks to resolve the "access issue" that the EVB Defendants believe has negatively impacted the value of the Property. Compl; ¶ 26; EVB Ans. ¶ 26. Further, should the Court deny the requested relief, the EVB Defendants would have no basis upon which to appeal because "only a party aggrieved by a judgment or order" has a right of appeal. *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 333 (1980).[8] Indeed, a properly aligned defendant would not be aggrieved if the Court denied the relief sought against it.

_____

[8] As defendants in the instant case, denial of the requested relief would be judgment in favor of the EVB Defendants. However, given the possible deleterious impact of such determination on the value of the Property, the economic interests of the EVB Defendants would be negatively impacted. Therefore, unless the Court realigns the parties according to their actual

Given the apparent alignment of interests between EVB and the Debtor, the Court inquired at trial whether the Debtor would consider dismissing the EVB Defendants as defendants to the suit, and Plaintiff's counsel agreed to dismiss them on the basis that they were not "participants." June Tr. 5:13-14. However, the Court ultimately declined to dismiss the EVB Defendants upon their counsel's representation that they "needed to be made a party" to avoid creating a chain of title issue. *Id*. at 5:21-22.

The Court agrees with the EVB Defendants' representation. The trustees under the deed of trust hold legal title to the Property, and EVB, as beneficiary under the deed of trust, is materially interested in the outcome of this case. *See Allen v. Chapman*, 406 S.E.2d 186, 189 (Va. 1991) (quoting 1 Minor, *The Law of Real Property* § 606 (F. Ribble 2d ed. 1928)). Accordingly, any ruling by the Court that alters the value of the Property that serves as collateral would implicate the interests of the EVB Defendants.

Therefore, the EVB Defendants should remain parties in this case, but must be realigned. Having determined that the interests of the EVB Defendants and the Debtor are aligned, the Court concludes that the EVB Defendants shall be realigned as plaintiffs in this suit.[9]

## IV. Declaratory Relief

Pursuant to the Declaratory Judgment Act and Federal Rules of Bankruptcy Procedure 7001(2) and 7001(9), the Complaint alleges four Counts seeking declaratory relief in favor of the

---

interests, EVB will have no method of appeal if the Court declines to rule in favor of their economic interests.

[9] Notwithstanding their realignment in this suit, for the purpose of clarity, the Court will continue to refer to the parties as the EVB Defendants.

14

Debtor.[10] When presented with an actual "case or controversy," the Declaratory Judgment Act allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). Such declaration shall have the force of a final judgment. *Id.*

The Supreme Court of the United States has made clear that actions brought pursuant to the Declaratory Judgment Act must be limited to instances where the dispute between the parties is "'definite and concrete, touching the legal relations of parties having adverse legal interests'; and that it be 'real and substantial' and 'admi[t] of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'" *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Aetna Life Ins. Co. of Hartford v. Haworth*, 300 U.S. 227, 240-41 (1937)); *see also White v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 913 F.2d 165, 167-68 (4th Cir. 1990).

Accordingly, prior to reaching the merits of the requested declaratory relief, a court must first determine whether it has jurisdiction over the matter. The Fourth Circuit Court of Appeals articulated a three-prong test in *Volvo Construction Equipment of North America v. CLM Equipment Co.* for determining whether a court may exercise such jurisdiction: (1) the dispute must present a "case or controversy" pursuant to Article III of the United States Constitution, (2) the court must have an independent basis for asserting jurisdiction, and (3) the court's exercise of jurisdiction must not present an abuse of the court's discretion to hear the matter. *Volvo*, 386 F.3d 581, 592 (4th Cir. 2004); *see also Shore Bank v. Harvard*, 934 F. Supp. 2d 827, 836 (E.D.

---

[10] The Court notes that in the Complaint, the Debtor requests entry of declaratory judgment pursuant to "20 U.S.C. § 2201." Compl. ¶ 2. However, the Declaratory Judgment Act, pursuant to which a federal court may issue a declaratory judgment, is found at 28 U.S.C. § 2201(a).

Va. 2013). Only if all three prongs are satisfied may a court assert jurisdiction and enter declaratory judgment. *Volvo*, 386 F.3d at 592.

Regarding the first prong of *Volvo*, this inquiry is fact specific, requiring that the court review the dispute between the parties to determine the existence of a legal dispute touching upon their legal interests. *Yakubu v. United States*, No. 1:11CR199, 2017 WL 993203, at *2 (E.D. Va. Mar. 15, 2017). Accordingly, there is no single test for determining whether the facts of a case satisfy the "case or controversy" requirement set forth in *Volvo*. *See Alpharma, Inc. v. Purdue Pharma L.P.*, 634 F. Supp. 2d 626, 629 (W.D. Va. 2009) (citing *MedImmune*, 549 U.S. at 127) (explaining that to establish a case or controversy, "the plaintiff must show that there is a substantial controversy between the parties that is (1) definite and concrete and (2) sufficiently immediate and real"); *see also Capital One Fin. Corp. v. Drive Fin. Servs., LP*, 434 F. Supp. 2d 367, 372 (E.D. Va. 2006) (explaining that declaratory relief shall be entered when the plaintiff "(1) [] has a real and reasonable apprehension of litigation, and (2) [] has engaged in a course of conduct which brought it into conflict with the declaratory defendant").

Further, even if the court determines it has an independent basis for jurisdiction over the controversy pursuant to *Volvo's* second prong, the court nonetheless may abstain pursuant to the third prong, as entry of declaratory judgment is within the court's discretion. *See, e.g.*, *N. Jefferson Square Assocs., L.P. v. Va. Hous. Dev. Auth.*, 94 F. Supp. 2d 709, 714 (E.D. Va. 2000) (observing that entry of declaratory relief is discretionary, not mandatory). A court considering whether to abstain from exercising jurisdiction "must consider whether declaratory relief would 'serve a useful purpose in clarifying and settling the legal relations in issue,' and whether the judgment would 'terminate and afford relief from the uncertainty, insecurity, and controversy

giving rise to the proceeding.'" *Great Am. Ins. Co. v. GRM Mgmt., LLC*, No. 3:14CV295, 2014 WL 6673902, at *11 (E.D. Va. Nov. 24, 2014) (quoting *Volvo*, 386 F.3d at 594).

In *Norfolk Dredging Company v. Phelps*, the United States District Court for the Eastern District of Virginia identified four factors to consider when determining whether to exercise jurisdiction pursuant to the third prong:

> (1) whether the judgment "will serve a useful purpose in clarifying the legal relations in issue;" (2) whether the judgment "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding;" (3) considerations of federalism, efficiency, and comity; (4) "whether the declaratory judgment action is being used merely as a device for procedural fencing—that is, to provide another forum in a race for res *judicata* or to achieve a federal hearing in a case otherwise not removable.

*Norfolk Dredging Co. v. Phelps*, 433 F. Supp. 2d 718, 721 (E.D. Va. 2006) (quoting *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422-23 (4th Cir. 1998)); *see also Kettler Int'l, Inc. v. Starbucks Corp.*, 55 F. Supp. 3d 839, 848 (E.D. Va. 2014) (applying the same four factor test articulated in *Phelps*). In consideration of these four factors, trial courts have abstained when faced with a request for declaratory relief that is duplicative of relief requested elsewhere in the complaint, *Sprint Nextel Corp. v. Simple Cell, Inc.*, Civ. No. CCB-13-617, 2014 WL 883982, at *2 (D. Md. Mar. 4, 2014), or which mirrors the relief requested in a pending state court matter, *Wilton v. Seven Falls Co.*, 515 U.S. 277, 282 (1995).

Because Counts II through V of the Complaint request different forms of declaratory relief against the Williamses, the Court will accordingly review each Count separately to determine whether all prongs of the *Volvo* analysis are satisfied, thereby permitting the Court to assert jurisdiction and consider the merits of the Debtor's requested relief.

### A. Count II

Count II of the Complaint requests the following declaratory relief:

> [Declaratory judgment that the] Debtors [*sic*] current and intended use of the subject easement, for ingress and egress, by the current owner and subsequent owners of the benefitted lot and subdivided lots, including their reasonable invitees, is permitted by the easement and within the scope of the easement.

Compl. ¶ 30(i).

Preliminarily, the Court notes that the Debtor requests relief as to "the current owner" as well as "subsequent owners" of the Property. *Id.* The Court declines to rule as to "subsequent owners," and any rights they and their reasonable invitees may have to use the Easement for ingress and egress, as these parties are not presently before the Court and the Debtor lacks standing to request relief on their behalf. *See Calvary Christian Ctr. v. City of Fredericksburg*, 800 F. Supp. 2d 760, 768 (E.D. Va. 2011) (quoting *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 215 (4th Cir. 2002)). Accordingly, with respect to subsequent owners, the Court denies the relief requested in Count II and limits any ruling on Count II to the Debtor.

With respect to the first prong of *Volvo*, the relief requested in Count II directly relates to the ongoing dispute between the parties regarding who may use the Easement. Satisfaction of prong one of *Volvo* requires that there exist "a substantial controversy, between parties having adverse legal interests, of sufficient immediacy" to warrant issuance of declaratory relief. *See MedImmune*, 549 U.S. at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). There is a clear controversy with regard to who may utilize the Easement. Waltrip believes that the Easement should be available for use by the Debtor's workmen and other invitees necessary to develop and sell the Property. March Tr. 98:5-11. However, Mr. Williams admits to advising prospective purchasers that "the lot owner could use the [E]asement, but not guests." *Id.* 149:14-15. Mr. Williams also explained that, in his view, the Deed of Easement fails to permit use of the Easement by the Debtor's workmen or invitees. *Id.* 158:1-4.

Further underlining the ripeness of this controversy, the Debtor alleges that this dispute has negatively impacted its ability to market the Property. Compl. ¶ 22 (alleging that "the Debtor has been unable to identify a qualified real estate agent willing to accept the listing"). In addition, the Debtor argues that the actions of the Williamses waylaid prospective purchasers, resulting in the withdrawal of purchase offers. *Id*. Taken together, these facts evince a clear dispute between the parties as to who may access the property via the Easement. Accordingly, there is a sufficient "case or controversy" to satisfy the first prong of *Volvo*.

With regards to the second prong of *Volvo*, which touches on the Court's jurisdiction, the Court finds that it has an independent basis for reviewing this matter because the Easement is property of the Debtor's estate under 11 U.S.C. § 541, and the Court therefore has exclusive jurisdiction over this property pursuant to 28 U.S.C. § 1334(e)(1). Accordingly, prong two of *Volvo* is satisfied.

Finally, the Court finds no reason to abstain from exerting jurisdiction pursuant to the third prong of *Volvo*. A determination of the scope of the Easement will certainly resolve the dispute between the parties regarding who may use the Easement, which has allegedly hampered the Debtor's ability to market the Property and diminished the Property's value. Further, none of the circumstances that would normally warrant abstention, including the existence of a concurrent state court adjudication, are present with regards to Count II. Accordingly, the third prong of *Volvo* is satisfied.

Having determined that the requirements for asserting jurisdiction pursuant to *Volvo* are satisfied, the Court now turns to the merits of Count II with respect to the Debtor.

1. Use of the Easement

When the terms of a contract are clear, the contract should be "construed according to its plain meaning." *PMA Capital Ins. Co. v. U.S. Airways, Inc.*, 626 S.E.2d 369, 372 (Va. 2006); *see also Dewberry & Davis, Inc. v. C3NS, Inc.*, 732 S.E.2d 239, 243 (Va. 2012); *McCarthy Holdings LLC v. Burgher*, 716 S.E.2d 461, 464 (Va. 2011); *Allen v. Allen*, 789 S.E.2d 787, 792 (Va. App. 2016) (explaining that "the court assigns reasonable meaning to the words and clauses in the contract and assumes that no word or clause is without purpose"). Accordingly, when tasked with interpreting an unambiguously drafted contract, a court's interpretation shall be confined to the four corners of the instrument, and "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." *PMA Capital Ins. Co.*, 626 S.E.2d at 372-73 (quoting *D.C. McClain, Inc. v. Arlington Cty.*, 452 S.E.2d 659, 662 (Va. 1995)).

As a form of contract, easement documents are governed by the above caselaw, and therefore, unambiguous deeds of easement must be interpreted according to their plain meaning. However, the Virginia Legislature has made clear that when a deed of easement is silent regarding its permissible use, the owner of the dominant estate may use the easement in a manner that is "reasonably consistent" with the uses "contemplated by" the easement document. Va. Code Ann. § 55-50.1; *accord McCarthy Holdings*, 716 S.E.2d at 464; *Shooting Point, L.L.C. v. Wescoat*, 576 S.E.2d 497, 502-03 (Va. 2003) (citations omitted) ("[W]hen an easement is created by grant or reservation and the instrument creating the easement does not limit its use, the easement may be used for any purpose to which the dominant estate may then, or in the future, reasonably be devoted."); *Walton v. Capital Land, Inc.*, 477 S.E.2d 499, 501 (Va. 1996)

("[T]he owner of the servient estate retains the right to use his land in any manner which does not unreasonably interfere with the use granted in the easement.").

Looking first at the four corners of the Deed of Easement, the Court finds that the document is silent as to whether the Debtor's reasonable invitees may use the Easement. Specifically, the Deed of Easement grants the right of ingress and egress to the Grantees, which the document defines to include the Debtor, its successors and assigns, and any subsequent purchaser of up to "three riverfront lots and one interior lot," but makes no reference to invitees. Debtor Ex. 2 at 1. Further, the document fails to indicate that this right to ingress and egress shall be for the exclusive use of the Grantees. The document is therefore silent with regards to whether anyone other than the Grantees may use the Easement. Accordingly, faced with a document that fails to specifically grant or deny use by the Debtor's reasonable invitees, use of the Easement shall be determined by the reasonable uses contemplated by the Deed of Easement.

Given that the Deed of Easement clearly contemplates the subdivision, development, and sale of the Property by the Debtor, use of the Easement by the Debtor and its reasonable invitees consistent with this purpose shall be permitted. Indeed, the document expressly permits use of the Easement to develop the Property, including "laying, construct[ing] and maintaining underground utilities," *id*. at 1, and improving the gravel driveway, *id*. at 2. The intended development and sale of the Property is further evidenced by the language in the Deed of Easement referencing the subdivision of the Property into up to four lots. *Id*. at 1. Importantly, the Deed of Easement contemplates uses that maintain the Easement's current landscape conditions, prohibiting "destruction or mutilation of the trees currently lining the driveway." *Id*. at 2. While the Debtor may use the Easement for subdivision, sale, and development, uses for these purposes must be limited to those that do not disrupt the tranquility of the Easement's tree

line, as doing so violates the terms of the Deed of Easement, and, further, could represent an overburdening of the servient estate, in violation of Virginia law. *See Hayes v. Aquia Marina, Inc.*, 414 S.E.2d 820, 822 (Va. 1992).

Accordingly, the Court concludes that use of the Easement extends to the Debtor and its reasonable invitees as is necessary for the sale and development of the Property, which is consistent with the uses contemplated by the Deed of Easement.

### B. Count III

Count III requests the following relief:

> [Declaratory judgment that] Williams [*sic*] are not entitled to erect fences, gates or barriers across the easement, nor may they impede, in any way, the use of the easement.

Compl. ¶ 30(ii). Put simply, this count requests declaratory relief that the Williamses may not impede the Debtor's use of the Easement. *Id.*

The Debtor's papers evidence a clear controversy between the Debtor and the Williamses with regard to whether the Williamses may construct a barrier across the Easement, thereby satisfying prong one of *Volvo*. Specifically, the Debtor asserts that the Williamses impeded use of the Easement in the first instance by constructing a rope and chain barrier across the Easement and also advised prospective purchasers that access to the lots is "limited and restricted." Compl. ¶ 17. The Debtor further alleges that the rope and chain barrier was subsequently removed and replaced with the Gate, further impeding use of the Easement. *Id.* ¶ 20(iii). The Williamses admit to constructing the rope and chain barrier and the Gate. Williams Ans. ¶ 17. However, they maintain that Virginia law permits them, as the servient estate holders, to maintain a gate on the Easement. March Tr. 163:22-164:16. The Debtor disagrees with this interpretation of Virginia law. Compl. ¶ 21. Further, as the Court has noted elsewhere, the Debtor alleges that the various

barriers on the Easement have negatively impacted its ability to effectively market the Property. *Id*. ¶¶ 17, 21. In short, there is a clear controversy between the parties regarding the maintenance of the Gate or any other impediment to use of the Easement, which settles prong one of the *Volvo* analysis.

Notwithstanding this fact, and although the Court has already determined it has jurisdiction over the Easement, thereby satisfying the second prong of *Volvo*, the Court declines to exercise jurisdiction pursuant to *Volvo's* third prong because Count III is duplicative. A federal court may decline to exercise jurisdiction over a declaratory judgment action that is the "mirror image" of a claim asserted elsewhere by the plaintiff. *Sprint Nextel Corp.*, 2014 WL 883982, at *2; *see also Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 863 (E.D. Va. 2016) (citing *Metra Indus., Inc. v. Rivanna Water & Sewer Auth.*, No. 3:12CV00049, 2014 WL 652253, at *2 (W.D. Va. Feb. 19, 2014)); *Merritt Hawkins & Assocs., LLC v. Gresham*, No. 3:13-CV-00312-P, 2014 WL 685557, at *3 (N.D. Tex. Feb. 21, 2014); *S. Bank & Tr. Co. v. Alexander* (*In re Alexander*), No. 11-74515-SCS, 2014 WL 3511499, at *5 (Bankr. E.D. Va.), *aff'd*, 524 B.R. 82 (E.D. Va. 2014).

Count III of the Complaint seeks declaratory relief that perfectly parallels the injunctive relief requested in Count I. Specifically, in Count III, the Debtor requests that the Court declare that the Williamses may not construct a barrier across the Easement or otherwise "impede" use of the Easement. Compl. ¶ 30(ii). This requested declaratory relief is a near-verbatim recitation of the requested injunctive relief, which requests, in part, that the Court enjoin the Williamses from placing barriers "of any kind" on the Easement. *Id.* ¶ 27. Therefore, because Count III serves no additional purpose in settling the legal dispute between the parties, and merely requests duplicative relief, the Court declines to extend jurisdiction to review this Count.

## C. Count IV

Count IV requests the following relief:

> [Declaratory judgment that] [t]he Debtor is not required by law, or the plain language of the easement, to have or create any other access to the property other than the easement, to access the property from Green Springs [*sic*] Road or to construct access roads or driveways from Green Springs [*sic*] Road.

*Id.* ¶ 30(iii).

Preliminarily, the Court finds that pursuant to *Volvo*, the Court has jurisdiction to consider the relief requested in Count IV. In satisfaction of prong one, the papers filed by the parties indicate a dispute between the Debtor and the Williamses with regards to whether the Easement is intended to serve as the primary or secondary means of accessing the Property. *See id.* ¶ 18 (positing that "there is no document, deed, plat, or other writing stating that the subject easement was to be 'secondary' or access 'limited'"); Williams Ans. ¶ 18 (denying the allegations in paragraph 18 of the Complaint). Accordingly, the Court finds there is sufficient dispute between these parties to satisfy prong one of *Volvo*.

Reaching prong two of *Volvo*, as the Court has previously held, the Easement, with respect to which the Debtor requests declaratory judgment in Count IV, is property of the estate under 11 U.S.C. § 541. Therefore, the Court has exclusive jurisdiction over the Easement pursuant to 28 U.S.C. § 1334(e)(1), satisfying *Volvo's* second prong.

Finally, looking to prong three of *Volvo*, the Court finds no reason to warrant its abstention, as none of the factors that normally warrant abstention are present with regards to Count IV. Specifically, the Court finds that Count IV is not duplicative of relief requested elsewhere in the Complaint and further finds that a determination as to Count IV would assist in clarifying the relations between the Debtor and the Williamses with regards to the Easement.

Therefore, the Court concludes that *Volvo* is satisfied, and the Court has jurisdiction to consider the merits of Count IV.

With regards to the requested relief, the Court finds that the Debtor requests declaratory judgment on two bases: (1) declaratory judgment that the Deed of Easement does not require the Debtor to have or create an additional access point to the Property via Greensprings Road or otherwise (the "Deed of Easement Declaration") and (2) declaratory judgment that Virginia law does not require the Debtor to have or create an additional access point to the Property via Greensprings Road or otherwise (the "Virginia Code Declaration"). The Court shall first address the Deed of Easement Declaration, and, thereafter, will consider the merits of the Virginia Code Declaration.

### 1. The Deed of Easement Declaration

Upon review of the Deed of Easement, the Court finds that it does not require the Debtor to have or create an additional access point via Greensprings Road or otherwise. When interpreting an unambiguous deed of easement, a court must construe the document pursuant to its plain meaning. *PMA Capital Ins. Co.*, 626 S.E.2d at 372. On this point, the Court finds that, while there is no language designating the Easement as the exclusive access point to the Property, the Deed of Easement also imposes no requirement that the Debtor have or construct additional access points via Greensprings Road, or elsewhere. When, as here, a deed of easement is silent as to a given use, the dominant estate may use the easement in any manner "reasonably consistent" with those uses "contemplated by" the deed of easement. Va. Code Ann. § 55-50.1. Looking to the uses contemplated by the Deed of Easement, the Court has previously found that the document permits use of the Easement by the Debtor and its reasonable invitees as necessary for the sale and development of the Property, provided the trees lining the Easement are left

undisturbed. Accordingly, the Court concludes that the Debtor need not construct an additional

point of access for so long as the Debtor and its reasonable invitees use the Easement within the

scope previously set forth by the Court.

## 2. The Virginia Code Declaration

Put simply, the Virginia Code Declaration requests that the Court issue a declaratory

judgment that there is no law that requires the Debtor to have or create additional access points

to the Property via Greensprings Road or otherwise. The Court is unaware of any section of the

Virginia Code, or applicable caselaw, which generally requires a dominant estate holder to

construct additional access points to the dominant estate other than an Easement. Accordingly,

the Court concludes that under Virginia law the Debtor is not required to have or create an

additional access point to the Property so long as use of the Easement remains within the scope

defined by the Court.[11]

## D. Count V

Count V requests the following relief:

> Such other and further [declaratory judgments that] will permit a title insurer to
> insure title to the subdivided lots, including the easement without exception.

---

[11] Section 55-50.1 of the Virginia Code requires the dominant estate holder to refrain
from uses that are not reasonable consistent with those uses contemplated by the Deed of
Easement. Accordingly, the dominant estate holder is prohibited from overburdening the
easement. *See Hayes*, 414 S.E.2d at 822 (explaining that "no use may be made of the easement
which is different from that established at the time of its creation and which imposes an
additional burden upon the servient estate"). The Court further notes that the Deed of Easement
requires that the trees lining the Easement be left undisturbed. Debtor Ex. 2 at 2. At present,
there is no evidence in the record to indicate that the Debtor has overburdened the Easement in
any way, including by disturbing the tranquility of the Easement's tree line. However, should the
Debtor or its reasonable invitees wish to engage in activities that would overburden the
Easement, the Debtor will have to consider alternative means of accessing the Property that
would permit such activities, so as not to run afoul of applicable law.

26

Compl. ¶ 30(iv). As far as the Court can determine, Count V requests any declaratory judgment

necessary to permit the Debtor to obtain title insurance on the Property. *Id.* The Complaint

provides no indication as to what specific declarations of right such relief would entail.[12]

Reaching the first prong of the *Volvo* analysis, the Court finds that Count V fails to

present a case or controversy between the parties sufficient to satisfy *Volvo*. As outlined

previously, in its *Volvo* decision, the Fourth Circuit Court of Appeals articulated that a request

for declaratory judgment must present a "controversy that qualifies as an actual controversy

under Article III of the Constitution." *Volvo*, 386 F.3d at 592. There must exist "substantial

controversy, between parties having adverse legal interests, of sufficient immediacy and reality

to warrant the issuance of a declaratory judgment." *MedImmune*, 549 U.S. at 127 (quoting *Md.*

*Cas. Co.*, 312 U.S. at 273); *see also Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006) (citing

*Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992)).

Count V fails to satisfy *Volvo's* first prong. Put simply, the Debtor must identify a

"definite or concrete" dispute between itself and the Williamses which the Court may redress by

---

[12] The Court notes that pursuant to Federal Rule of Civil Procedure 10(c), as incorporated into the Federal Rules of Bankruptcy Procedure by Rule 7010, any exhibit to the Complaint shall be considered part of the pleading, and can therefore be relied upon to determine the scope of relief requested in Count V. Fed. R. Civ. P. 10(c). However, upon review of the exhibits attached to the Complaint, the Court finds nothing that explains the specific declarations sought by Count V.

At the March Hearing, the Debtor elicited testimony from a representative for Fidelity National Title Insurance Company, who explained what declarations would be required to enable the Debtor to obtain insurance. March Tr. 114:15-115:10. The Court further notes that the Williamses introduced an exhibit, which appears to be an email that outlines the declaratory relief contemplated by Count V. Williams Ex. M. Specifically, it enumerates the declarations of right that would be necessary for the Debtor to obtain title insurance. *Id.* The Debtor is not proceeding *pro se* and is not entitled to liberal construction of the Complaint. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972). Accordingly, for the purpose of determining the scope of the relief requested in Count V, the Court must construe the Complaint as drafted.

a declaratory judgment as to their legal interests. The Court acknowledges that in the Complaint

the Debtor alleges that the "Williams [*sic*] assertions" would be excepted from any title

insurance policy on the Property. However, in Count V, the Debtor has not identified the

"definite or concrete" dispute that would be redressed by the issuance of specific declaratory

relief, thereby enabling it to obtain title insurance.

If disputes with the Williamses are preventing the Debtor from obtaining adequate title

insurance, the Debtor must identify those disputes and request declaratory judgment on those

bases. The rulings on those identifiable controversies may have the consequence of enabling the

Debtor to obtain the title insurance it seeks. However, because the Debtor focused on the desired

consequence of declaratory relief, rather than the specific controversies that must be redressed,

the Court cannot issue the requested declaratory relief.

For the foregoing reasons, the Court concludes that there is an insufficient case or

controversy to satisfy prong one of *Volvo*. Accordingly, the Court lacks jurisdiction to enter the

requested declaratory relief.

### V. Injunctive Relief

Count I requests the following relief:

> [Entry of an injunction that] prohibit[s] and enjoin[s] Williams [*sic*] from placing
> barriers of any kind on the subject easement, erecting signage that will or could be
> construed as relating to the easement or communicating in any manner with
> prospective purchasers or business invitees of the Debtor.

Compl. ¶ 27. A bankruptcy court is authorized to issue an injunction pursuant to Federal Rule of

Bankruptcy Procedure 7001(7) and two provisions of the Bankruptcy Code. The first is 11

U.S.C. § 362, which provides for an automatic stay upon the filing of a bankruptcy petition.

Intended to provide a breathing spell from the factors that drove the debtor to bankruptcy, the

automatic stay protects a debtor from any action that would interfere with the debtor's ability to

effectively reorganize. 3-362 Collier on Bankruptcy P 362.01 (16th ed. 2017) (explaining that 11

U.S.C. § 362 "stays a wide range of actions that would affect or interfere with property of the

estate, property of the debtor or property in the custody of the estate"). Accordingly, to enforce

the injunctive relief provided by the automatic stay, a court must enjoin all activities proscribed

by 11 U.S.C. § 362(a).

     The process for issuing an injunction pursuant to 11 U.S.C. § 362 is straightforward: first,

the Court considers whether the alleged action is prohibited by 11 U.S.C. § 362(a), and, if so, the

Court may then proceed to enforce the automatic stay by enjoining the proscribed action. *See*

*A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1001-02 (4th Cir. 1986).

     However, if 11 U.S.C. § 362(a) does not prohibit the activity, the Court may still consider

whether it is appropriate to issue a permanent injunction pursuant to 11 U.S.C. § 105(a):

> The relevant Senate report explained that § 105(a) grants bankruptcy courts "all
> the traditional injunctive powers of a court of equity." S. Rep. No. 95-989, at 51
> (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5837. "Stays or injunctions
> issued under these other sections will not be automatic upon the commencement
> of the case, but will be granted or issued under *the usual rules for the issuance of
> injunctions.*" *Id.* (emphasis added). The Second, Third, and Eighth Circuits have
> similarly applied the traditional standard with respect to stays that are not
> automatic under § 362(a). *See NLRB v. Superior Forwarding, Inc.*, 762 F.2d 695,
> 699 n.3 (8th Cir. 1985) (staying NLRB regulatory proceeding against debtor);
> *Wedgewood Inv. Fund v. Wedgewood Realty Group, Ltd.* (*In re Wedgewood
> Realty Group, Ltd.*), 878 F.2d 693, 700-01 (3d Cir. 1989) (reimposing automatic
> stay); *Manville Corp. v. Equity Sec. Holders Comm.* (*In re Johns-Manville Corp.*),
> 801 F.2d 60, 68-69 (2d Cir. 1986) (reversing stay of shareholder action seeking to
> compel debtor to hold an annual meeting).

*Solidus Networks, Inc. v. Excel Innovations, Inc.* (*In re Excel Innovations, Inc.*), 502 F.3d 1086,

1094 (9th Cir. 2007); *see also A.H. Robins Co.*, 788 F.2d at 1002. The majority of circuits that

have reviewed injunctions staying actions against non-debtors pursuant to § 105(a) have applied

the standard test for issuing an injunction in that jurisdiction. *See, e.g.*, *Am. Imaging Servs. v.

Eagle-Picher Indus., Inc.* (*In re Eagle-Picher Indus., Inc.*), 963 F.2d 855, 858 (6th Cir. 1992);

*Commonwealth Oil Ref. Co v. EPA* (*In re Commonwealth Oil Ref. Co.*), 805 F.2d 1175, 1188-89

(5th Cir. 1986); *A.H. Robins Co.*, 788 F.2d at 1008. In this Circuit, the issuance of a permanent

injunction requires that the moving party demonstrate the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (quoting

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). Application of the standard test

when issuing injunctions pursuant to § 105(a) is consistent with congressional intent.

*Commonwealth Oil*, 805 F.2d at 1188-89. Upon a finding that all four factors are met, the Court

nonetheless retains the equitable discretion to deny issuance of the injunction. *Bethesda

Softworks, L.L.C. v. Interplay Entm't Corp.*, 452 F. App'x 351, 353 (4th Cir. 2011) (citing

*Christopher Phelps*, 482 F.3d at 543) (explaining that a court may decline to grant injunctive

relief "even when a plaintiff has made the requisite showing"); *Safeway Inc. v. CESC Plaza Ltd.

P'ship*, 261 F. Supp. 2d 439, 467 (E.D. Va. 2003).

To efficiently analyze the Debtor's requested injunctive relief, the Court bifurcates this

count into two, that portion of the claim requesting that the Williamses be prohibited from

placing barriers on the Easement, including the Gate (hereinafter the "Gate Injunction") and that

portion of the claim that requests that the Court enjoin the Williamses from erecting signage

related to the Easement or from communicating with prospective purchasers (hereinafter the

"Speech Injunction"). The Court will first address the Speech Injunction, followed by the Gate

Injunction.

## A. The Speech Injunction

The Court declines to issue the Speech Injunction because such behavior is not covered by 11 U.S.C. §§ 362(a)(1)-(8), and further, the Debtor has failed to allege sufficient facts to entitle it to an injunction pursuant to 11 U.S.C. § 105(a).

First, there is no evidence to indicate that there is presently any signage installed on the Easement or relating to the Easement. The "no trespassing" sign that hung from the rope and chain barrier, which crossed the Easement prior to the petition date, was removed from the Easement upon construction of the Gate. *Compare* Debtor Ex. 11, *with* Debtor Ex. 12, *and* Williams Ex. F. Further, the other signage installed by the Williamses is on a grassy area adjacent to the Easement and cannot then be construed as relating to the Easement.[13] Second, Mr. Williams admits to discussing the scope of the Easement with at least three prospective purchasers, March Tr. 176:11-177:2, including one conversation around November of 2015 when Mr. Williams explained to the would-be-buyer that "the [E]asement as written does not allow for guests, invitees, or anyone else," *id.* 148:22-23; *see also id.* 176:13-18. Regardless of method, communicating one's interpretation of the scope of an easement is not an act that violates 11 U.S.C. §§ 362(a)(1)-(8). Finding otherwise, and enjoining the Williamses' speech regarding the Easement would exceed the scope of the automatic stay, a core feature of the bankruptcy system created with the limited intent of giving beleaguered debtors a "breathing spell" from those enumerated actions that hamper a debtor's ability to reorganize. *In re Al's Transmission Serv., Inc.*, No. 95-1-1579-PM, 1995 WL 781697, at *2 (Bankr. D. Md. Dec. 28, 1995) (quoting H.R. Rep. No. 95-595, at 340-42 (1977), S. Rep. No. 95-989, at 49-51 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787 at 5840 and 6296-97). Accordingly, the Court finds that

---

[13] Both parties entered into evidence photographs of a "for sale" sign and a "no trespassing" sign installed on a grassy area adjacent to the driveway leading to the Williamses' property. Debtor Ex. 12; Williams Ex. L.

31

the automatic stay is inapplicable to the Speech Injunction, and therefore the Court lacks the authority to enjoin the enumerated activities pursuant to 11 U.S.C. § 362(a).

Finding the automatic stay inapplicable, the Court further declines to enter the Speech Injunction pursuant to the Court's broad statutory authority under 11 U.S.C. § 105(a). As it is requesting a permanent injunction, the Debtor must satisfy each component of the four-factor test for the granting of relief under 11 U.S.C. § 105(a), demonstrating the following:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Christopher Phelps*, 482 F.3d at 543 (quoting *eBay*, 547 U.S. at 391).

In reviewing the record, the Court finds it bereft of any evidence to support a finding that the Debtor has suffered actual injury due to the Williamses installing a "no trespassing" sign on the rope and chain barrier, which was removed from the Easement, or discussing the scope of the Easement with prospective purchasers. Despite the opportunity to present evidence at the March Hearing and at the trial on June 28, 2017, the Court notes that counsel for the Debtor provided no evidence to support its oft-cited contention that the Williamses prevented sale of the Property. The Debtor offered two real estate purchase agreements for the Property into evidence. Despite alleging in the Complaint that the Williamses have "effectively destroy[ed]" the Debtor's ability to market the property, Compl. ¶ 22, no evidence was presented by the Debtor that these offers were revoked due to the actions of the Williamses. Indeed, the Court's record reflects that no testimony whatsoever was elicited from the proponents of the purchase agreements. Further, Waltrip did not testify as to his understanding as to why the offers he received did not result in sale. The Court cannot speculate as to why these offers did not result in sale of the Property.

As the Debtor has failed to satisfy its burden to prove that it suffered an irreparable injury, one of the elements of the requested injunctive relief, the Court concludes that it may not issue a permanent injunction in favor of the Debtor pursuant to 11 U.S.C. § 105(a).[14]

### B. The Gate Injunction

As the construction or maintenance of any barrier on the Easement constitutes a violation of the automatic stay, the Court will grant the Gate Injunction and direct the Williamses to deconstruct the Gate over the Easement and enjoin them from placing any other barrier on the Easement.

The Court has already determined that the Easement is property of the estate. Here, the Court finds that the construction and maintenance of the Gate or any other barrier on the Easement represents an attempt by the Williamses to "exercise control over property of the estate," in violation of 11 U.S.C. § 362(a)(3).

In the context of 11 U.S.C. § 362(a)(3), control is interpreted broadly to include any actions taken post-petition against estate property that disrupt the status quo and inhibit the debtor's ability to effectively proceed through the bankruptcy process. *Conn. Pizza, Inc. v. Bell Atl.-Wash., Inc.* (*In re Conn. Pizza, Inc.*), 193 B.R. 217, 227-28 (Bankr. D. Md. 1996); *In re Fitch*, 217 B.R. 286, 291 (Bankr. S.D. Cal. 1998) (explaining that "[t]he automatic stay serves to freeze the positions of the debtor and his or her creditors as of the date of the petition—to maintain the status quo"). Accordingly, a third party exercises control in violation of 11 U.S.C. § 362(a)(3) by engaging in any post-petition action that "exercise[s] some authority or influence over the property in derogation of the estate." *In re Harchar*, 393 B.R. 160, 170 (Bankr. N.D. Ohio 2008); *see also In re Weidenbenner*, 521 B.R. 74, 79 (Bankr. S.D.N.Y. 2014) (quoting

---

[14] The Court acknowledges the First Amendment implications of the requested relief, but need not reach them, as the Court has declined to issue an injunction.

*Thompson v. GMAC, LLC*, 566 F.3d 699, 702 (7th Cir. 2009)) (explaining that "to 'exercise control' is 'to exercise restraining or directing influence over' or 'to have power over'").

Restriction of access to estate property is proscribed by 11 U.S.C. § 362(a)(3). For example, in *In re Lankford*, the chapter 7 debtors arrived at their former rental home intending to collect certain belongings when they discovered their belongings had been moved into the garage and that they had been locked out of the home and garage. *In re Lankford*, 305 B.R. 297, 300 (Bankr. N.D. Iowa 2004). Interpreting the protections afforded by the automatic stay to be "extremely broad," the Bankruptcy Court for the Northern District of Iowa found the landlord's actions violative of 11 U.S.C. § 362(a)(3) because they were undertaken during the pendency of the bankruptcy case against estate property. *Id*. at 301-02. Like the landlord in *Lankford*, who locked the debtors out of their residence, the Williamses too have restricted the Debtor's access to property of the estate by constructing barriers on the Easement. Further, while the Williamses and the *Lankford* landlord may have believed that their actions were lawful, the automatic stay prohibits "all harassment," whether lawful or not. *See id*. at 301.

The Court finds that the construction and maintenance of the Gate on the Easement constitutes control over estate property in violation of 11 U.S.C. § 362(a)(3) for the following reasons. First, the Gate creates a visual barrier. This fact is clear upon a review of the photographs entered into evidence by the Debtor. In particular, the Court notes that the Gate is constructed of several metal bars affixed to wooden fencing on either side. Debtor Ex. 12. The Gate's presence on the Easement signals that access to the Easement is not unrestrained for anyone, including the Debtor and its reasonable invitees, who are entitled to use the Easement.

Further, the Gate imposes a physical barrier to entry. Unlike a gateless right of way, the Gate is large, traverses the Easement, and is enclosed by wooden fencing at either side. *Compare*

Debtor Ex. 10 *with* Ex. 12; *see also* Williams Ex. F. Further, the Gate must be unchained and manually opened and closed by anyone attempting to access the Easement. *See* Williams Ex. F. Collectively, the Gate's features significantly curtail access to the Property via the Easement.

Although the Williamses have noted that the Gate is unlocked, this fact does not obviate a violation of 11 U.S.C. § 362(a)(3). As the Bankruptcy Court for the Southern District of New York makes clear in *In re Weidenbenner*, an entity "exercises control" by "restraining or directing influence over" estate property. *In re Weidenbenner*, 521 B.R. at 79 (quoting *Thompson*, 566 F.3d at 702). Accordingly, even if the Gate remains unlocked, its presence on the Easement nevertheless imposes a barrier to entry and restrains access to the Easement, thereby exerting control over estate property in violation of 11 U.S.C. § 362(a)(3).

The Court notes that the Williamses also argue that Virginia law permits them to maintain a gate over the Easement, March Tr. 163:22-164:16, a point contradicted by the Debtor, Compl. ¶ 21. Regardless of whether Virginia law permits the Williamses to maintain a barrier on the Easement, the Court need not address the issue. Even assuming that the Gate is lawful, because it violates the automatic stay, the Court has the authority to enjoin its maintenance during the course of this case. *See* 3-362 Collier on Bankruptcy P 362.03 (16th ed. 2017) (explaining that "[t]he stay of section 362 is extremely broad in scope and . . . applies to almost any type of formal or informal action taken against the debtor or the property of the estate").

Accordingly, the Court finds that the Gate exercises control over the Easement, which may result in the Debtor's inability to effectively market the Property. Therefore, the Court concludes that the construction and maintenance of the Gate across the Easement violates 11 U.S.C. § 362(a)(3), and the Williamses are enjoined from maintaining the Gate.

Further, the Court enjoins the Williamses from constructing or maintaining any barrier across the Easement. Indeed, regardless of whether it is comprised of metal bars, rope, or any other material, any barrier that restrains access to the Easement, which is property of the estate, is a violation of 11 U.S.C. § 362(a)(3). For this reason, the construction or maintenance of any barrier is likewise enjoined.

Importantly, the Court's injunction against the construction or maintenance of the Gate or any barrier on the Easement is entirely consistent with the Debtor's authority to "use property of the estate in the ordinary course of business" pursuant to 11 U.S.C. § 363(c)(1). Indeed, as the Debtor operates a business created for the express purpose of developing and selling property, it is necessary that the Debtor and its reasonable invitees be able to access the Property via the Easement, which is made more difficult by a barrier on the Easement.

The Williamses are not without remedy. As servient estate holders, the Williamses own the tract of land burdened by the Easement. *Tardy v. Creasy*, 81 Va. 553, 556-57 (1886).[15] Accordingly, the Williamses could be entitled to adequate protection with respect to the Debtor's use of the Easement, upon a proper showing.[16] However, as the Williamses have not filed the

---

[15] As the servient estate holders, the Williamses retain their property interests, including their right to enjoy the property over which the Easement runs in any manner that "does not unreasonably interfere with the use and enjoyment of the easement." *Preshlock v. Brenner*, 362 S.E.2d 696, 698 (Va. 1987).

[16] While emphasizing the importance of giving debtors the opportunity to take a breath and regroup, to balance the competing needs of third parties, the Bankruptcy Code acknowledges the rights of third parties by requiring that the debtor provide these entities adequate protection. Adequate protection is intended to shield these parties from any impairment that might result from a debtor's use of property of the estate during the pendency of the bankruptcy case. *See MBank Dallas, N.A. v. O'Connor (In re O'Connor)*, 808 F.2d 1393, 1396 (10th Cir. 1987) (acknowledging that adequate protection offers entities protection from "unfair treatment" in view of the remedies available to debtors and trustees in bankruptcy).

appropriate papers, the issue of adequate protection is not currently before this Court for determination.

## VI. Conclusion

Having considered the arguments and evidence in this matter, the Court concludes that, while the Williamses' speech regarding their interpretation of the Easement will not be enjoined, they shall be enjoined from maintaining the Gate or any barrier across the Easement for the pendency of the Debtor's bankruptcy case. The Court further concludes that the Debtor and its reasonable invitees may use the Easement for subdivision, sale, and development of the Property, so long as such uses do not overburden the Easement. However, the Court declines to issue declaratory relief as to the scope of the Easement with respect to subsequent purchasers of the Property who are not before the Court. Finally, the Court concludes that neither Virginia law nor the Deed of Easement obligates the Debtor to construct additional points of access to the Property. As to the other relief requested, the Court lacks jurisdiction to entertain those matters.

The Court will enter a separate Order consistent with the findings and conclusions contained in this Memorandum Opinion.

The Clerk shall deliver copies of this Memorandum Opinion to W. Greer McCreedy, II, counsel for the Debtor; C. Lewis Waltrip, II, Debtor Designee; Peter G. Zemanian, counsel for John and Maxine Williams; John and Maxine Williams; and Kimberly A. Taylor, counsel for EVB, Mark C. Hanna, and Conway H. Shield, III.

Entered this 18th day of August, 2017, at Newport News in the Eastern District of Virginia.

Aug 18 2017

/s/ Frank J. Santoro
FRANK J. SANTORO
United States Bankruptcy Judge

Entered on Docket:  Aug 18 2017